**DAVID W. PACE** (State Bar No. 15393000)
dpace63@gmail.com
707 Omar Street
Houston, TX 77009
Telephone: (832) 582-5078
Facsimile: (832) 582-5078

Allan Kanner, Esq. (State Bar No. 109152)
a.kanner@kanner-law.com
Conlee Whiteley, Esq. (*Pro Hac Vice*)
c.whiteley@kanner-law.com
Cynthia St. Amant, Esq. (State Bar No. 24002176) (*Pro Hac Vice*)
c.stamant@kanner-law.com
**KANNER & WHITELEY, L.L.C.**
701 Camp Street
New Orleans, LA 70130
Telephone: (504) 524-5777
Facsimile: (504) 524-5763

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| MILTON M. COOKE, JR.,<br>individually and on behalf of all others<br>similarly situated,<br><br>Plaintiff,<br><br>V.<br><br>DOLLAR GENERAL<br>CORPORATION (d/b/a Dolgencorp of<br>Texas, Inc.), a Tennessee corporation,<br><br>Defendant. | CASE NO. 15-CV-03680<br><br>FIRST AMENDED CLASS ACTION<br>COMPLAINT AND DEMAND FOR<br>JURY TRIAL<br><br>1. Deceptive Trade Practices, *Texas Business and Commerce Code Sec. 17.41, et seq.*<br>2. Breach of Warranty and Unconscionable Conduct, *Texas Business and Commerce Code Sec. 17.41, et seq.*<br>3. Breach of Implied Warranty of Merchantability<br>4. Breach of Implied Warranty of Fitness for a Particular Purpose<br>5. Unjust Enrichment |

Plaintiff Milton M. Cooke, Jr. ("Plaintiff"), individually and on behalf of all

others similarly situated, makes the following allegations based on his personal

knowledge of his own acts and, otherwise, upon information and belief based on investigation of counsel.

## NATURE AND SUMMARY OF THE ACTION

1. Plaintiff, by and through undersigned counsel, brings this action both on his own behalf and on behalf of the class defined below, comprised of all individuals similarly situated within the State of Texas, to redress the unlawful and deceptive practices employed by Defendant Dollar General Corporation, a Tennessee corporation doing business in Texas as Dolgencorp of Texas, Inc. (hereinafter "Dollar General" or "Defendant") in connection with its marketing and sale of its company-branded motor oil sold in its stores.

2. Dollar General sells an entire line of company-branded motor oils (labeled "DG") that are obsolete and potentially harmful to its customers' automobiles by using deceptive and misleading tactics including the positioning of its line of obsolete motor oils immediately adjacent to the more expensive standard- and premium-quality motor oils manufactured by its competitors and failing to adequately warn its customers that its DG motor oil is unsuitable for use by the vast majority, if any, of its customers.

3. Dollar General's unlawful and deceptive business practices violate the Deceptive Trade Practices – Consumer Protection Act, *Texas Business and Commerce Code Sec. 17.41*, *et seq.* ("DTPA") and the contractual rights of consumers.

Class Action Complaint                                    2

## JURISDICTION AND VENUE

4. Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §§1332(d), because members of the proposed Class are citizens of States different from Defendant's home state of Tennessee, there are more than 100 Class Members, and the amount-in-controversy exceeds $5,000,000 exclusive of interest and costs.

5. This Court has jurisdiction over Defendant because Defendant is a foreign corporation or association authorized to do business in Texas through its wholly owned subsidiary Dolgencorp of Texas, Inc. which is registered with the Texas Secretary of State, does sufficient business in Texas, and has sufficient minimum contacts with Texas or otherwise intentionally avails itself of the laws and markets of Texas, through the promotion, sale, marketing and distribution of its merchandise in Texas, to render the exercise of jurisdiction by the Texas courts permissible.

6. Venue is proper in this District under 28 U.S.C. §1391(b) and (c) because Defendant's improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from this judicial district, because Defendant has caused harm to Class Members residing in this district, and/or because the Defendant is subject to personal jurisdiction in this district.

7. In addition, Defendant operates numerous stores in Texas and has received substantial compensation from Texas consumers who purchase goods from Defendant.

Class Action Complaint

## PARTIES

8. Plaintiff Milton M. Cooke, Jr. is an individual adult resident citizen of Houston, Harris County, Texas and is a member of the Class alleged herein.

9. Plaintiff purchased Dollar General's DG-branded motor oil from a Dollar General store in Houston, Texas in December 2015.

10. Defendant Dollar General Corporation is incorporated under the laws of the State of Tennessee, with its corporate headquarters located at 100 Mission Ridge, Goodlettsville, Tennessee.

11. At all relevant times, Defendant produced, marketed, distributed and sold its obsolete DG-branded motor oil in its stores throughout the United States, including in the State of Texas, utilizing deceptive and misleading marketing and sales practices to induce Plaintiff and Class Members into purchasing its obsolete motor oil for use in their modern-day vehicles knowing that its motor oil is obsolete and likely to cause damage to any such vehicle.

## FACTUAL ALLEGATIONS

12. Dollar General operates a chain of variety stores headquartered in Goodlettsville, Tennessee. As of January 2015, Dollar General operated over 12,198 stores in 43 states. Dollar General does business in Texas through 1246 retail stores located throughout the State of Texas.

Class Action Complaint                                              4

13.  Dollar General is a discount retailer focused on low and fixed income consumers in small markets.  Dollar General's business model includes locating its stores in rural, suburban communities, and in its more densely populated markets, Dollar General's customers are generally from the neighborhoods surrounding the stores.  Dollar General's stores are located with the needs of its core customers (low and fixed income households) in mind.

14.  Dollar General offers basic every day and household goods, along with a variety of general merchandise at low prices to provide its customers with one-stop shopping opportunities generally in their own neighborhoods.

15.  In addition to offering name brand and generic merchandise, Dollar General manufactures and markets its own lines of inexpensive household products, which bear the designation "DG."  DG lines include "DG Auto," "DG Hardware" "DG Health" and "DG Office."

16.  Dollar General's DG Auto line consists of three types of obsolete motor oil: DG SAE 10W-30, DG SAE 10W-40 and DG SAE-30 that fail to protect and can actively damage, modern-day automobiles.

17.  Motor oils lubricate the engines of the automobiles driven by individuals. Their main function is to reduce wear on an engine's moving parts.  Motor oils also inhibit corrosion, improve sealing and keep engines properly cooled.

18.  Motor oils have evolved in parallel with the automobiles they are meant to protect.  Institutions like the Society of Automotive Engineers ("SAE") employ

rigorous tests to ensure that motor oils meet evolving standards relating to, among other criteria, sludge buildup, temperature volatility, resistance to rust, resistance to foaming, resistance to oil consumption, homogeneity and miscibility.

19. Motor oils designed to protect engines from earlier eras do not protect, and can harm, modern-day engines. Thus, motor oil that would be suitable to use in an engine manufactured in the 1980's or earlier is not suitable for use in modern-day engines.

20. Dollar General engages in the unfair, unlawful, deceptive and fraudulent practice of marketing, selling and causing to be manufactured, obsolete motor oil without adequately warning that its product is unsuitable for, and can harm, the vehicles driven by the overwhelming majority of Dollar General's customers (and the public at large)

21. Dollar General misleads customers using product placement tactics and misleading product labels which obscure a critical fact from Dollar General's customers: Dollar General's motor oil is unfit for, and can harm, the vehicles driven by the vast majority, if not all, of its customers.

22. Dollar General's in-house motor oils use the same or similar SAE nomenclature on the front of its labels (*e.g.*, 10W-30, 10W-40, SAE 30) as do the other mainstream, non-harmful, and actually useful brands of motor oil sold by Dollar General and beside which Dollar General places its DG brand motor oil on its shelves.

23.   Additionally, the front label of DG's SAE 10W-30 and SAE 10W-40 motor oils says, "Lubricates and protects your engine."

24.   However, among the small print on the back label of Dollar General's motor oils is the statement that DG SAE 10W-30 and DG SAE 10W-40 are admittedly "not suitable for use in most gasoline powered automotive engines built after 1988" and "may not provide adequate protection against the build-up of engine sludge" and that DG SAE 30 is admittedly "not suitable for use in most gasoline powered automotive engines built after 1930," and its "use in modern engines may cause unsatisfactory engine performance or equipment harm."

25.   Dollar General conceals this language by rendering it in small font and confining it to the product's back label.

26.   Dollar General further conceals this language by placing it below a message that presents a misleading impression of the product.  For the DG SAE 10W-30 and DG SAE 10W-40 products, that message reads, "SAE 10W-30 motor oil is an all-season, multi-viscosity, heavy duty detergent motor oil recommended for gasoline engines in older model cars and trucks.  This oil provides oxidation stability, anti-wear performance, and protection against deposits, rust and corrosion."  For the DG SAE 30 product, that message reads: "DG Quality SAE 30 is a non-detergent motor oil designed for use in older engines where consumption may be high and economical lubricants are preferred."

Class Action Complaint                                7

27.   Few, if any, Dollar General customers drive vehicles for which these products are safe, and the use of the term "older" is a relative term that does not inform a reasonable consumer that these motor oils are not safe for cars manufactured within the past *27 years*, or in the case of Dollar General's DG SAE 30, the past *85 years*.

28.   Dollar General further disguises the obsolete and harmful nature of its motor oils with its positioning of these motor oils on its shelves in a misleading manner. Specifically, Dollar General places similar quantities of its in-house brand motor oils, DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30, none of which are suitable for modern-day automobiles, adjacent to an array of other motor oils which are suitable for modern-day vehicles.  The photograph below illustrates how Dollar General effects this deception:

Class Action Complaint                              8



29.  As the photograph above illustrates, Dollar General places its in-house brand motor oils on the same shelves, in the same or similar quantities, as PEAK, Pennzoil, Castrol and other legitimate motor oils that are suitable for modern-day automobiles.  Each type of motor oil uses the SAE nomenclature on the front, *e.g.*, 10W-40.  The only apparent difference is the price, as Dollar General's motor oils are less expensive than the others.

30.  Defendant's product display conceals the fact that its DG-brand motor oils have an extremely obscure and limited use and are likely to cause damage to the

engines of most of their customer's cars. Defendant's product positioning and the deceptive label on the motor oil are likely to deceive reasonable consumers.

31. Dollar General also fails to warn its customers adequately of the obsolete nature of DG-branded motor oils or of the dangers DG-branded motor oils pose to the very automobiles its customers are trying to protect by purchasing Dollar General's motor oil. An adequate warning for Dollar General's obsolete motor oils would be displayed conspicuously and would inform Dollar General's customers of the appropriate uses, if any, of the various types of Dollar General motor oils. But Dollar General provides its customers with no such conspicuous warnings. Instead, the company buries the aforementioned statements on the back of its products in small type where customers are unlikely to encounter them.

32. DG SAE 10W-30 bears the following labels on its front (left) and back (right):



The photograph below is a close-up of DG SAE 10W-30's back label, which includes the warnings, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE

POWERED AUTOMOTIVE ENGINES BUILT AFTER 1988" and "IT MAY NOT
PROVIDE ADEQUATE PROTECTION AGAINST THE BUILD-UP OF ENGINE
SLUDGE":



33. DG SAE 10W-40 bears the following labels on its front (left) and back
(right):



The following photograph is a close-up of DG SAE 10W-40's back label, which
includes the warnings, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE
POWERED AUTOMOTIVE ENGINES BUILT AFTER 1988" and "IT MAY NOT

PROVIDE ADEQUATE PROTECTION AGAINST THE BUILD-UP OF ENGINE

SLUDGE":

SAE10W-40
Motor Oil API SERVICE SF

SAE 10W-40 motor oil is an all-season, multi-viscosity, heavy duty detergent motor oil recommended for gasoline engines in older model cars and trucks. This oil provides oxidation stability, antiwear performance, and protection against deposits, rust and corrosion.

CAUTION — THIS OIL IS RATED API SERVICE CATEGORY SF. IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED AUTOMOTIVE ENGINES BUILT AFTER 1988. IT MAY NOT PROVIDE ADEQUATE PROTECTION AGAINST THE BUILD-UP OF ENGINE SLUDGE.

WARNING: Contains petroleum lubricant. Avoid prolonged contact. Wash skin thoroughly with soap and water. Launder or discard soiled clothes. Consumer product- Refer to the Safety Data Sheet for OSHA GHS classification and additional product information.

DON'T POLLUTE - CONSERVE RESOURCES. RETURN USED OIL TO THE COLLECTION CENTER.

This engine oil's service level is in accordance with the designated SAE J300 engine oil viscosity classification and suitable for former SAE J-183 engine oil service classification as designated on this label.

34.    DG SAE 30 bears the following the labels on its front (left) and back (right):



The photograph below is a close-up of DG SAE 30's back label which includes the

warnings, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED

AUTOMOTIVE ENGINES BUILT AFTER 1930" and "USE IN MODERN

ENGINES MAY CAUSE UNSATISFACTORY ENGINE PERFORMANCE OR

EQUIPMENT HARM":

**SAE 30 Motor Oil** API SERVICE SA

**Non-detergent**

DG Quality SAE 30 is a non-detergent motor oil designed for use in older engines where consumption may be high and economical lubricants are preferred.

CAUTION – THIS OIL IS RATED API SA. IT CONTAINS NO ADDITIVES. IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED AUTOMOTIVE ENGINES BUILT AFTER 1930. USE IN MODERN ENGINES MAY CAUSE UNSATISFACTORY ENGINE PERFORMANCE OR EQUIPMENT HARM.

WARNING: Prolonged or repeated contact with used motor oil has been shown to cause skin cancer in lab animals. Promptly wash with soap and water. KEEP OUT OF REACH OF CHILDREN.

DON'T POLLUTE – CONSERVE RESOURCES. RETURN USED OIL TO COLLECTION CENTER.

This engine oil's service level is in accordance with the designated SAE J300 engine oil viscosity classification and suitable for former SAE J-183 engine oil service classification as designated on this label.

ADVERTENCIA: No contiene aditivos. No adecuado para use in motores de automóvil de gasoline fabricados después del año 1930. Su uso en motores más modernos puede causar un desempeño no satisfactorio o dañar el equipo.

35.   Dollar General's entire line of low-cost motor oil is unsuitable for the modern-day vehicles driven by its customers and has no business being sold, except that Dollar General is successfully deceiving a sufficient number of customers to make this fraudulent practice worthwhile.   It is unfair, unlawful, deceptive and fraudulent for Dollar General to distribute, market, and sell an entire line of motor oil that is unfit for, and presents concrete dangers to, the automobiles driven by the vast majority of its customers.

36.   Dollar General knew or should have known that its customers are being or will, in reasonable probability, be deceived by its marketing strategy based on the quantity of its obsolete DG motor oil sold compared to the limited number of automobiles for which these oils are appropriate.

37.   The Texas DTPA is designed to protect consumers from this type of false, deceptive, misleading and predatory unconscionable conduct.

38. Defendant's unfair and deceptive course of conduct victimized all purchasers of Dollar General's motor oil from Dollar General, throughout the country and in the State of Texas.

39. As a direct and proximate result of Dollar General's deceptive and fraudulent practices, Plaintiff and the Class Members purchased a product they would not have otherwise purchased and have suffered and will continue to suffer economic damages.

40. In addition, many Class Members have sustained damage to their automobiles as a result of the use of Dollar General's DG-branded motor oil and have suffered and will continue to suffer economic damage as a result.

41. Plaintiff therefore brings the statutory and common law claims alleged herein to halt Dollar General's deceptive practices and to obtain compensation for the losses suffered by Plaintiff and all Class Members.

## **Unjust Enrichment**

42. Plaintiff and Class Members have conferred substantial benefits on the Defendant by purchasing its useless and harmful motor oil, and Dollar General has consciously and willingly accepted and enjoyed these benefits.

43. Defendant knew or should have known that consumers' payments for its obsolete and harmful motor oil were given and received with the expectation that the motor oil would lubricate and protect consumers' engines and would not be harmful to their vehicles.

44.  Because of the fraudulent misrepresentations, concealments, and other wrongful activities described herein, Defendant has been unjustly enriched by its wrongful receipt of Plaintiff's and Class Members' monies.

45.  As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and Class Members have suffered damages in an amount to be determined at trial.

46.  Defendant should be required to account for and disgorge all monies, profits and gains which they have obtained or will unjustly obtain in the future at the expense of consumers.

## CLASS ACTION ALLEGATIONS

47.  Plaintiff brings this class action pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all members of the following Class:

> **All persons in the State of Texas who purchased Defendant's DG-branded motor oil, DG SAE 10W-30, DG SAE 10W-40 and/or DG SAE 30, for personal use and not for re-sale, since December 2011.**

48.  Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

49.  Specifically excluded from the proposed Class are Dollar General, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, successors, assigns, or other persons or entities related

to or affiliated with Dollar General and/or its officers and/or directors, or any of them. Also excluded from the proposed Class are the Court, the Court's immediate family and Court staff.

### FRCP 23(a) Factors

50. **Numerosity.** Membership in the Class is so numerous that separate joinder of each member is impracticable. The precise number of Class Members is unknown at this time but can be readily determined from Defendant's records. Plaintiff reasonably estimates that there are tens of thousands of persons in the Class.

51. **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel highly experienced in complex consumer class action litigation and intends to prosecute this action vigorously. Plaintiff is a member of the Class described herein and does not have interests antagonistic to, or in conflict with, the other members of the Class.

52. **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class and Sub-Class. Plaintiff and all members of the Class and Sub-Class purchased obsolete, harmful, deceptively labeled and deceptively marketed motor oil from Dollar General and were subjected to Defendant's common course of conduct.

53. **Existence and Predominance of Common Questions of Law and Fact.** There are numerous and substantial questions of law and fact common to all Class

Members sufficient to satisfy Rule 23(a), and that control this litigation and predominate over any individual issues for purposes of Rule 23(b)(3). Included within the common questions are:

a) The amount of Defendant's in-house brand motor oil it sold relative to the other brands of oil on its shelves;

b) The amount of Defendant's in-house brand motor oil it sold relative to the limited number of automobiles for which these motor oils are appropriate;

c) Whether Defendant studied the effect of its product placement on its shelves;

d) Whether Defendant studied or tested its label and the effect of its labels on consumers' perceptions;

e) Whether Defendant studied the susceptibility of consumers;

f) The cost to Defendant to manufacture, distribute, market and sell its DG-branded motor oil compared to the revenue it received from its sales;

g) Whether Defendant misrepresented the safety and suitability of its DG-branded motor oil sold at its stores nationwide;

h) Whether Defendant's conduct of placing the obsolete Dollar General motor oil next to legitimate, useful motor oil is likely to deceive reasonable consumers;

i) Whether the warnings provided on the labels of Dollar General's motor oil were adequate;

j) Whether Defendant's conduct of hiding the warnings on the back label is likely to deceive reasonable consumers;

k) Whether Defendant deliberately misrepresented or failed to disclose material facts to Plaintiff and Class Members regarding the obsolete and harmful nature of its DG-branded motor oil;

l) Whether Dollar General's conduct, as alleged herein, constitutes a false, misleading or deceptive act or practice in the conduct of any trade or commerce under the Texas Deceptive Trade Practices – Consumer Protection Act, Texas Business and Commerce Code §17.41, *et seq*.;

m) Whether Dollar General's conduct, as alleged herein, constitutes an unconscionable act or practice actionable under the Texas Deceptive Trade Practices – Consumer Protection Act, Texas Business and Commerce Code §17.50(a)(3), *et seq*.;

n) Whether Dollar General's conduct, as alleged herein, constitutes a breach of an express or implied warranty actionable under the Texas Deceptive Trade Practices – Consumer Protection Act, Texas Business and Commerce Code §17.50(a)(2), *et seq*.;

o) Whether the Class is entitled to injunctive relief prohibiting the wrongful practices alleged herein and enjoining such practices in the future;

p) Whether Plaintiff and members of the Class are entitled to restitution;

q) Whether compensatory, consequential and punitive damages ought to be awarded to Plaintiff and Class Members;

r) Whether Plaintiff and Class Members are entitled to attorneys' fees and expenses, and in what amount;

s) The proper method for calculating damages and restitution classwide; and

t) Whether Plaintiff and Class Members are entitled to declaratory and/or other equitable relief.

## FRCP 23(b)(2)

54. Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual member of the Class that would establish incompatible standards of conduct for Defendant.

55. Injunctive relief is necessary to prevent further fraudulent and unfair

business practices by Defendant. Money damages alone will not afford adequate and complete relief, and injunctive relief is necessary to restrain Defendant from continuing to commit its deceptive, fraudulent and unfair policies.

## **FRCP 23(b)(3)**

56. **Common Issues Predominate:** As set forth in detail herein above, common issues of fact and law predominate because all of Plaintiff's DTPA and warranty claims are based on a deceptive common course of conduct. Whether Dollar General's conduct is likely to deceive reasonable consumers and breaches the implied warranties of merchantability and fitness for a particular purpose is common to all members of the Class and are the predominate issues, and Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims

57. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a) Given the size of the claims of individual Class Members, as well as the resources of Dollar General, few Class Members, if any, could afford to seek legal redress individually for the wrongs alleged herein;

b) This action will permit an orderly and expeditious administration of the claims of Class Members, will foster economies of time, effort and expense and will ensure uniformity of decisions;

c) Any interest of Class Members in individually controlling the prosecution of separate actions is not practical, creates the potential for inconsistent or contradictory judgments and would create a burden on the court system;

d) Without a class action, Class Members will continue to suffer damages, Defendant's violations of law will proceed without remedy, and Defendant will continue to reap and retain the substantial proceeds derived from its wrongful and unlawful conduct. Plaintiff and Class Members have suffered damages as a result of Defendant's unlawful and unfair conduct. This action presents no difficulties that will impede its management by the Court as a class action.

58. **Notice to the Class:** Notice can be accomplished by publication for most Class Members, and direct notice may be possible for those who are members of a Dollar General's rewards program or for whom Dollar General has specific information. Further, publication notice can be easily targeted to Dollar General customers because Defendant only sells the subject motor oil in its own stores.

59. The Class members have been monetarily damaged and suffered injury in fact as a result of Dollar General's misconduct, in that each member purchased Dollar General's useless and harmful motor oil.

## CLAIMS FOR RELIEF

60. Based on the foregoing allegations, Plaintiff's claims for relief include the following:

### FIRST CAUSE OF ACTION
### VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES – CONSUMER PROTECTION ACT SEC'S 17.46(b)(5), 17.46(b)(7) and 17.46(b)(9)
### *Texas Business and Commerce Code §17.46(b)(5), 17.46(b)(7) and 17.46(b)(9)*

61. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

62. Plaintiff brings this claim under DTPA Sec.'s 17.46(b)(5), 17.46(b)(7) and 17.46(b)(9) on behalf of himself and the Class, who were subject to Defendant's above-described false, deceptive or misleading conduct.

63. As alleged hereinabove, Plaintiff has standing to pursue this claim as Plaintiff has suffered actual economic damages as a proximate result of Defendant's actions as set forth herein.

64. Plaintiff and members of the Class are consumers as defined by DTPA Sec. 17.45(4). The DG-branded motor oils are goods within the meaning of DTPA Sec. 17.45(1).

65. This cause of action is asserted on behalf of a subclass of the putative Class, comprised of those members who purchased DG-branded motor oil within three (3) years of the commencement of this action.

Class Action Complaint                    22

66. Specifically, as described herein, Dollar General made the following representations, expressly or by implication to Plaintiff and Class Members about the deceptively labeled motor oil: (i) that Dollar General's DG-branded motor oil was suitable for use in its customers' automobiles; (ii) that Dollar General's DG-branded motor oil was safe to use in its customers' automobiles; and (iii) that Dollar General's DG-branded motor oil was of similar quality as the other motor oils beside which Dollar General's DG-branded motor oils were positioned on the shelves in Defendant's stores.

67. These representations were materially misleading and deceptive, and were a producing cause of economic damages to consumers.

68. Defendant violated and continues to violate the DTPA by engaging in the following practices proscribed by DTPA Sec's. 17.46(b)(5), 17.46(b)(7) and 17.46(b)(9) in transactions with Plaintiff and members of the Sub-Class, which were intended to result in, and did result in, the sale of DG-branded motor oils:

    a.    By representing that DG branded motor oil "Lubricates and protects your engine," placing the DG-branded motor oils on shelves next to legitimate motor oils intended for use in modern day vehicles, and failing to adequately warn consumers of the harm their products can cause, Defendant is representing that DG-branded motor oils have characteristics, uses and benefits which they do not have, in violation of DTPA Sec. 17.46(b)(5);

b.   By representing that DG branded motor oil "Lubricates and protects your engine," and placing the DG-branded motor oils on shelves next to legitimate motor oils intended for use in modern day vehicles, and failing to adequately warn consumers of the harm their products can cause, Defendant is representing that DG-branded motor oils are of a particular standard, quality, or grade, when they are of another, in violation of DTPA Sec. 17.46(b)(7);

c.   By representing that DG branded motor oil "Lubricates and protects your engine," and placing the DG-branded motor oils on shelves next to legitimate motor oils intended for use in modern day vehicles, and failing to adequately warn consumers of the harm their products can cause, Defendant is advertising goods with intent not to sell them as advertised in violation of DTPA Sec. 17.46(b)(9).

69.   Defendant violated the DTPA by failing to adequately warn Plaintiff and members of the Class that DG-branded motor oils are not suitable for, and can harm, most vehicles on the road.

70.   Defendant's actions as described herein were done knowingly with conscious disregard of Plaintiff's rights, and Defendant was wanton and malicious in its concealment of the same.

71.   Defendant's false, deceptive and misleading business practices constituted, and constitute, a continuing course of conduct in violation of the DTPA because

Defendant continues to sell the obsolete oil without adequate warnings and represent that the DG-branded motor oils have characteristics, uses and benefits which the products do not have, and has thus caused economic damage and continues to cause economic damage to Plaintiff and the Class.

72. Neither Plaintiff nor any reasonable consumer would have purchased the DG-branded motor oil if they were informed it was obsolete and not suitable for their vehicles, was not capable of protecting or lubricating their vehicles' engines, and could harm their vehicles.

73. Plaintiff seeks injunctive relief pursuant to DTPA Sec. 17.50(b)(2) in the form of enjoining Defendant from (1) selling obsolete oil; (2) expressly or impliedly representing to current and potential purchasers of the DG-branded motor oils that the product is suitable for use in modern day vehicles manufactured after 1988, or in the case of SAE-30, after 1930; (3) providing inadequate warnings as to the harm the oil can cause. Plaintiff also seeks injunctive relief in the form of corrective advertising requiring Defendant to disseminate truthful, adequate disclosures and warnings about the actual uses (to the extent there are any) of the DG-branded motor oils.

74. Plaintiff and members of the Class shall be irreparably harmed if such an order is not granted.

## SECOND CAUSE OF ACTION
### VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES –
### CONSUMER PROTECTION ACT SEC'S 17.50(a)(2) and 17.50(a)(3)
### *Texas Business and Commerce Code* Sec.'s 17.50(a)(2) and 17.50(a)(3)

75.   Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

76.  Plaintiff brings this claim under DTPA Sec.'s 17.50(a)(2) and 17.50(a)(3) on behalf of himself and the Class, who were subject to Defendant's above-described unconscionable, unfair and deceptive conduct.

77.   The actions of Defendant set forth above constitute breach of an express or implied warranty which was the producing cause of economic damages to Plaintiff and Class Members which is actionable under DTPA Sec. 17.50 (a)(2).

78.  The actions of Defendant set forth above constitute an unconscionable action or course of action which was committed knowingly, and which was the producing cause of economic damages to Plaintiff and Class Members actionable under DTPA Sec. 17.50(a)(3).

## THIRD CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability

79.   Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

80.  Beginning at an exact date unknown to Plaintiff, but at least since four years prior to the filing date of this action, and as set forth above, Defendant represented

Class Action Complaint                                    26

to consumers, including Plaintiff and Class Members, by labeling/packaging and other means, that DG SAE 10W-30, DG SAE 10W-40, and DG SAE 30 are safe and suitable for use in the automobiles driven by Dollar General's customers. Plaintiff and Class Members bought those goods from the Defendant.

81. Defendant was a merchant with respect to goods of the kind which were sold to Plaintiff and Class Members, and there was in the sale to Plaintiff and Class Members an implied warranty that those goods were merchantable.

82. However, Defendant breached that warranty implied in the contract for the sale of goods in that Dollar General's DG-branded motor oil is in fact not suitable for use in the vehicles driven by the vast majority, if any, of Dollar General's customers, as set forth in greater detail above.

83. As a result thereof Plaintiff and Class Members did not receive goods as impliedly warranted by Defendant to be merchantable.

84. As a proximate result of this breach of warranty by Defendant, Plaintiff and Class Members have been damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### Breach of Implied Warranty of Fitness for a Particular Purpose

85. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

86. Beginning at an exact date unknown to Plaintiff, but at least since four years prior to the filing date of this action, and as set forth above, Defendant sold its

DG-branded motor oils to Plaintiff and Class Members, who bought those goods from Defendant in reliance on Defendant's skill and judgment.

87.   At the time of sale, Defendant had reason to know the particular purpose for which the goods were required, and that Plaintiff and Class Members were relying on Defendant's skill and judgment to select and furnish suitable goods so that there was an implied warranty that the goods were fit for this purpose.

88.   However, Defendant breached the warranty implied at the time of sale in that Plaintiff and Class Members did not receive suitable goods, and the goods were not fit for the particular purpose for which they were required in that Dollar General's DG-branded motor oils are not safe or suitable for use in the vast majority, if any, of vehicles driven by Dollar General's customers, as set forth in detail above.

89.   This breach of warranty by Defendant has been the producing cause of economic damages to Plaintiff and Class Members in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### Unjust Enrichment

90.   Plaintiff and Class Members have conferred substantial benefits on the Defendant by purchasing its useless and harmful motor oil, and Dollar General has consciously and willingly accepted and enjoyed these benefits.

91.   Defendant knew or should have known that consumers' payments for its obsolete and harmful motor oil were given and received with the expectation that

the motor oil would lubricate and protect consumers' engines and would not be harmful to their vehicles.

92.   Because of the fraudulent misrepresentations, concealments, and other wrongful activities described herein, Defendant has been unjustly enriched by its wrongful receipt of Plaintiff's and Class Members' monies.

93.   As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and Class Members have suffered damages in an amount to be determined at trial.

94.   Defendant should be required to account for and disgorge all monies, profits and gains which they have obtained or will unjustly obtain in the future at the expense of consumers.

## DEMAND/PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and members of the Class defined herein, prays for judgment and relief as follows:

A. An order certifying that this action may be maintained as a class action;

B. An award to Plaintiff and Class Members of full restitution;

C. An order pursuant to DTPA Sec. 17.50(b)(2) enjoining Defendant from engaging in the unfair and/or deceptive acts or practices, as set forth in this Complaint, and requiring Defendant to disseminate corrective advertising;

D. Compensatory economic damages;

E. Punitive Damages and/or additional damages provided in DTPA Sec. 17.50(b)(1) for violations of the DTPA set forth above which were committed knowingly;

F. Restitution and equitable disgorgement of the unlawful profits collected by the Defendant;

G. An order providing for declaratory and/or injunctive relief:

   1. Declaring that Defendant must provide accurate representations of the quality of the motor oil sold at its stores;

   2. Enjoining Defendant from continuing the deceptive practices alleged herein; and

   3. Granting other extraordinary equitable and/or injunctive relief as permitted by law, including specific performance, reformation and imposition of a constructive trust;

H. Prejudgment and post-judgment interest at the prevailing legal rate;

I. Plaintiff's attorneys' fees and costs of suit; and

J. Such other and further relief as the Court may deem necessary and appropriate.

## **<u>JURY DEMAND</u>**

Plaintiff and Class Members, pursuant to Fed. R. Civ. P. 38(b), hereby demand trial by jury on all issues so triable.

DATED: December 23, 2015

**s/ David W. Pace**

**DAVID W. PACE**
Attorney in Charge
Texas Bar # 15393000
Southern District of Texas Bar #43
707 Omar Street
Houston, TX 77009
Telephone: (832) 582-5078
Facsimile:  (832) 582-5078

_____

**KANNER & WHITELEY, L.L.C.**
Allan Kanner, Esq.
Conlee Whiteley, Esq.
Cynthia St. Amant, Esq.
701 Camp Street
New Orleans, LA 70130
Telephone: (504) 524-5777
Facsimile: (504) 524-5763

*Attorneys for Plaintiff*

Class Action Complaint                                    51